

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| YANKTON SIOUX TRIBE, and its individual members,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS; LES BROWNLEE, Acting Secretary of the Army; JOHN PAUL WOODLEY, JR., Acting Principal Deputy Assistant Secretary of the Army for Civil Works; ROBERT E. FLOWERS, Chief of Engineers; CURT F. UBBELOHDE, Omaha District Commander and District Engineer; THE UNITED STATES OF AMERICA; THE STATE OF SOUTH DAKOTA; JOHN COOPER, Secretary of the Department of Game, Fish and Parks for the State of South Dakota; and JOHN DOES, Contractors,<br><br>Defendants. | CIV 02-4126<br><br>MEMORANDUM OPINION AND ORDER |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

After the Court allowed the Plaintiff Yankton Sioux Tribe ("the Tribe") to file a Second Amended Complaint, Defendants filed a joint Motion to Dismiss, Doc. 180. The motion has been fully briefed and will be decided based upon the written record.

## BACKGROUND

The original Complaint in this action contained two distinct types of claims: one alleging violations of the Native American Graves Protection and Repatriation Act ("NAGPRA"), 25 U.S.C. § 3001 *et seq.*, involving the inadvertent discovery of human remains; and one involving the transfer of lands from the United States Government to the State of South Dakota pursuant to Title VI of the

Water Resources Development Act ("WRDA"), Pub.L. No. 106-53, 113 Stat. 269 (1999), *as amended by* Pub.L. No. 106-541, § 540, 114 Stat. 2572 (2000). Following several Court hearings and the appointment of a Special Master, the NAGPRA claims were resolved, leaving the Title VI land transfers to be resolved in this action.

The claims in the Second Amended Complaint relate primarily to the land transfers. In Count One, the Tribe contends that the federal Defendants violated the WRDA by transferring the White Swan and North Point Recreations Areas to the State because those lands are within the Yankton Sioux Reservation. Count Two alleges that the transfers were completed after the January 1, 2002, deadline in the WRDA, making the transfers unlawful. In Count Three, the Tribe contends that the federal Defendants violated WRDA by failing to develop and implement clear and concise policies and procedures to ensure all requirements of NHPA would continue to be met and that they failed to take adequate steps to ensure the federal Defendants would have the ability to enforce NAGPRA, the Archeological Resources Protection Act ("ARPA"), and the National Historic Preservation Act ("NHPA") on the transferred lands. Count Four alleges a violation of § 110 of NHPA for failure to locate, inventory and nominate for inclusion on the National Register, cultural items and property within White Swan, North Point and other lands.

The relief requested in the Second Amended Complaint includes declaratory, mandamus and injunctive relief. The Tribe seeks a declaration that the transfer of the White Swan and North Point recreational areas are null and void because those lands are within an Indian reservation and the transfer was made too late. It seeks a further declaration that the transfer of these lands to the State could not remove these lands from the exterior boundaries of the Yankton Sioux Reservation. Mandamus relief is requested to cancel all deeds transferring land to the State pursuant to WRDA. Both declaratory and mandamus relief are requested to require the federal Defendants to devise and implement a concise and practical plan to continue to comply with NAGPRA, ARPA and NHPA. Mandamus relief is requested to require Defendant United States Army Corps of Engineers to locate, inventory and nominate for inclusion in the National Register all Native American cultural items and other historic properties within North Point and other lands the Tribe claims are at issue in this

action. The final relief requested is an injunction to stop all construction activities on the transferred lands and to prevent any additional transfers of land to the State.

In their Motion to Dismiss, Defendants contend that the Tribe lacks standing to pursue the claims in its Second Amended Complaint and that some of the claims must be dismissed as moot, requiring dismissal of the Tribe's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction. Defendants contend the Tribe has not articulated any concrete and particularized, actual or imminent injury to a legally protected interest and, thus, there is no case or controversy cognizable in this Court. According to Defendants, the land transferred to the State under WRDA was not within the boundaries of the Yankton Sioux Reservation. As to the claim regarding the late transfer under WRDA, Defendants contend the Tribe was not harmed by the late transfer and, thus, was not within the "zone of interest" to be protected by the statute. Defendants allege that only the State could have been harmed by the late transfer of title. Additionally, Defendants claim that Count Two must be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief may be granted and that Count Four must be dismissed because the Tribe failed to exhaust administrative remedies.

## DISCUSSION

In considering a motion to dismiss, the Court must assume all facts alleged in the complaint are true, *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994), and the complaint is to be viewed in the light most favorable to the non-moving party, *Frey v. Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995). "A motion to dismiss should be granted as a practical matter ... only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Id.* (citations and quotation marks omitted). If the Plaintiff lacks standing, the Court is without subject matter jurisdiction and is required to dismiss this action. *See Faibisch v. University of Minnesota*, 304 F.3d 797, 801 (8th Cir. 2002).

### A.     Count One

"In order to satisfy Article III's standing requirements, [Plaintiff] must have (1) suffered an injury in fact (2) that is fairly traceable to the challenged conduct and (3) likely to be redressed by the proposed remedy." *Starr v. Mandanici,* 152 F.3d 741, 748-49 (8th Cir. 1998). "The injury must be 'concrete and particularized,' not 'conjectural' or 'hypothetical,' and 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 & n. 1 (1992)). "In other words, the injury must be beyond that shared in substantially equal measure by all or a large class of citizens." *Id.* (quotation marks and citations omitted).

In this case, the Tribe alleges that the land transferred to the State pursuant to WRDA included lands that "are located within the exterior boundaries of the Yankton Indian Reservation, and in which the Yankton Sioux people continue to own legally-protected interests." (Second Amended Complaint, ¶ 1.) In contrast, the Defendants contend that the North Point Recreation Area and the White Swan area are not within the exterior boundaries of the Yankton Sioux Reservation.

At this stage of the proceedings, it appears that whether the lands are within the Yankton Sioux Reservation is the primary issue under Count One because the WRDA provides that the land to be transferred under § 605(b), is land that:

> (1) is located above the top of the exclusive flood pool of the Oahe, Big Bend, Fort Randall, and Gavin's Point projects of the Pick-Sloan Missouri River Basin program;
>
> (2) was acquired by the Secretary for the implementation of the Pick-Sloan Missouri River Basin program;
>
> (3) *is located outside the external boundaries of a reservation of an Indian Tribe;* and
>
> (4) is located within the State of South Dakota.

WRDA, § 605(b) (emphasis added). Thus, if the transferred land is within the external boundaries of the Yankton Sioux Reservation, it appears that land should not have been transferred under WRDA § 605(b). The Court notes that the status of the Yankton Sioux Reservation and its boundaries is currently pending before the Court in another matter, *Yankton Sioux Tribe v. Gaffey*,

4

CIV 98-4042 (D.S.D.). But for purposes of the motion to dismiss, since the Tribe is the non-moving party, the Court must accept as true the Tribe's allegations that the transferred lands are within the exterior boundaries of the Yankton Sioux Reservation and that the transfer to the State of South Dakota caused injury to Plaintiff's legally-protected interests in those lands. Thus, the Tribe has established for purposes of the motion to dismiss that it has suffered an injury in fact that is fairly traceable to the transfer of lands pursuant to WRDA, which would likely be redressed by voiding the transfers. Count One, therefore, will not be dismissed.

### B. Count Two

The claim in Count Two is that because the transfer of lands was completed *after* the deadline set forth in the statute, the Secretary was divested of authority to complete the transfers, thereby making the transfers null and void. The statute provides: "DEADLINE FOR TRANSFER OF RECREATION AREAS. - ... [T]he Secretary shall transfer recreation areas not later than January 1, 2002." WRDA, § 605(a)(1)(B), *as amended by* Pub.L. 106-541(d)(1)(C). Defendants contend that the Tribe lacks standing to pursue this claim because it was not within the zone of interest to be protected by this statute and they also seek a dismissal of this claim under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. The Rule 12(b)(6) argument advanced by Defendants is that the transfers are not void as the Secretary was not divested of authority to complete the transfers despite the failure to complete the transfers before the deadline in the statute.

> In *Crow Creek Sioux Tribe v. Brownlee*, 331 F.3d 912, 915 (D.C. Cir. 2003), the court stated:
>
> > In order to allow time for briefing and argument on the transfer issue, the district court, pursuant to agreement of the parties, ordered South Dakota not to accept title to the recreation areas until February 8, 2002.... As a result, the Corps transferred title to the recreation areas to South Dakota on February 8, 2002.

This explains why the transfer was late by 38 days.

The Sixth Circuit recognized that, "[t]he Supreme Court has held that courts are not to assume that an agency has lost jurisdiction merely because it has not acted within a statutorily specified time limit." *Friends of Crystal River v. United States Envtl. Prot. Agency*, 35 F.3d 1073,

5

1080 (6th Cir. 1994) (citing *General Motors Corp. v. United States*, 496 U.S. 530, 542 (1990); *Brock v. Pierce County*, 476 U.S. 253, 258-62 (1986)). If there is a consequence provided in the statute for the agency's failure to comply with the statutorily specified time limit, however, "the agency will lose jurisdiction to act." *Id.* (citing *Forth Worth Nat'l Corp. v. Federal Sav. & Loan Ins. Corp.*, 469 F.2d 47, 58 (5th Cir. 1972) (noting that a statutory time period is mandatory if the statute "both expressly requires an agency or public official to act within a particular time period and specifies a consequence for failure to comply with the provision.")).

The statute contains the directive that the Secretary "shall" transfer the lands by the deadline, but the Supreme Court has held that "the mere use of the word 'shall' in [a statute requiring agency action], standing alone, is not enough to remove the [agency's] power to act after [the statutorily specified time limit]." *Brock v. Pierce County*, 476 U.S. 253, 262 (1986.) Despite the addition of a specific deadline, Congress did not delete the original transfer deadline provided in § 605(e)(2), which provides that, "[a]ll land and recreation areas shall be transferred not later than 1 year after the full capitalization of the Trust Fund described in section 603." Moreover, Congress did not provide any type of consequence for failure to transfer the lands by January 1, 2002.

The cases cited by the Tribe in opposition to Defendants' argument that the Corps was not divested of authority to transfer the lands after the statutory deadline are inapposite. None of the cases involved agency action explicitly authorized by Congress that was completed after the expiration of a statutorily specified time limit. For example, *Royal Indemnity Co. v. United States*, 313 U.S. 289, 294 (1941), involved an issue of whether the authority to act by an agency could be *implied* from a statute. Likewise, *Spirit Lake Tribe v. North Dakota*, 262 F.3d 732, 740 (8th Cir. 2001), involved a question of whether a subordinate officer in an agency could abandon Government property without congressional authorization. In *United States v. City and County of San Francisco*, 112 F.Supp. 451, 453 (N.D.Cal. 1953), the district court considered whether an agency official had authority to execute an agreement with the defendant, a private contractor. The United States Court of Federal Claims considered in *Karuk Tribe of California v. United States*, 41 Fed.Cl. 468, 471 (Fed.Cl. 1998), whether an Indian tribe was entitled to just compensation for a taking of land that the executive branch had turned over to the tribe, where Congress had not authorized such

6

disposition. The issue in *Kern Copters, Inc. v. Allied Helicopter Serv., Inc.*, 277 F.2d 308, 313 (9th Cir. 1960), was whether an Army official had authority to relinquish title to a wrecked helicopter. The above cases involve questions of whether an agency of the United States was ever authorized by Congress to take the action it took. In this case, Congress explicitly delegated to the Secretary the authority to transfer the lands to the State. Moreover, the cases cited by the Tribe do not involve tardy agency action and whether the agency is divested of jurisdiction to act after the expiration of a time period established by Congress.

The Tribe cites *United States v. Board of Comm'r of Fremont County*, 145 F.2d 329, 330 (10th Cir. 1944), for the proposition that Congress has the exclusive right to "designate the persons to whom real property belonging to the United States shall be transferred, and to prescribe the conditions and mode of the transfer[.]" The Court does not disagree with this statement of the law, but it does not address the issue presented in this case of whether the Corps' failure to complete the transfers before the deadline divested it of the authority to complete the transfers. The one case cited by the Tribe that relates to tardy agency action does not compel the result advocated by the Tribe. *See Gold v. The Confederated Tribes of the Warm Springs Indian Reservation*, 478 F.Supp. 190, 198 (D.Or. 1979). The district court in *Gold* found that the Bureau of Indian Affairs ("BIA") lost authority to adopt a plan for distribution of a judgment fund, but that authority was not lost *solely* due to failure to comply with a statutory time limit. *See id.* Rather, the BIA failed to afford statutory procedural protections to 321 tribal members. *See id.* The district court stated an elapse of 270 days from when the plan was due to Congress and the elapse of five years since Congress had appropriated the money to pay the judgment were additional reasons for divesting the BIA of authority to act, and notably the district court did not cite any authority for the proposition that tardy agency action *alone* would divest the BIA of authority to act. *Cf. Brock*, 476 U.S. at 266 (holding that a statutory provision that an agency "shall" perform certain functions within a prescribed period "does not, standing alone, divest the [agency] of jurisdiction to act after that time."). In contrast to the cases cited by the Tribe, the cases cited by Defendants specifically address an agency's power to act after the expiration of a statutory time limit.

7

Based upon the above discussion of case law, the Court finds that the failure to transfer the lands until 38 days after the statutorily prescribed time period did not divest the Secretary of authority to complete the land transfers authorized by the WRDA. Congress explicitly authorized the Secretary to transfer the lands at issue and Congress did not provide any consequences in the statute for failure to comply with the deadline in the statute. *See Forth Worth Nat'l Corp. v. Federal Sav. and Loan Ins. Corp.*, 469 F.2d 47, 58 (5th Cir. 1972) (recognizing that "[a] statutory time period is not mandatory unless it both expressly requires an agency or public official to act within a particular time period and specifies a consequence for failure to comply with the provision."). Thus, Count Two of the Second Amended Complaint fails to state a claim upon which relief may be granted and it will be dismissed with prejudice.

C.      Count Three

The Tribe contends in Count Three that the Corps has failed to "take adequate steps to insure that it maintains and will continue to maintain the same practical ability to enforce the provisions of NAGPRA, ARPA and the NHPA on the transferred Pick-Sloan Program lands that it had prior to the transfer of these lands." (Second Amended Complaint, ¶ 65.) Violations of the Administrative Procedure Act and WRDA are asserted as a result of federal Defendants' alleged failure to devise and implement "a concise and practical plan to insure that the United States can continue to comply with its obligations under [NAGPRA, ARPA and NHPA]." (*Id.* at ¶ 67.)

Defendants assert that the Tribe lacks standing to pursue Count Three because it has failed to allege an injury that is concrete and particularized and sufficiently imminent or actual, rather than conjectural and hypothetical. *See Lujan*, 504 U.S. at 560-61 (explaining the elements of the constitutional minimum of standing). Count Three is not targeted at any present, ongoing violation of NAGPRA, ARPA or NHPA. In addition, Defendants contend that the Tribe has failed to establish the existence of a causal connection between the alleged failure to develop a plan to comply with NAGPRA, ARPA and NHPA on the transferred lands and the complained of conduct of transferring the lands under the WRDA. Rather, as recognized by the court in *Brownlee*, 331 F.3d at 917-18, "any lack of federal enforcement would be traceable not to the challenged land transfer, but rather

8

to the Secretary's failure to fulfill his continuing statutory duties under the cultural protection statutes."

The Court agrees with the *Brownlee* court that if the federal Defendants fail to comply with their duties under NAGPRA, ARPA or NHPA, such failure would not be traceable to the challenged land transfer. *See id.* Moreover, the Tribe has not cited to any statutory or constitutional requirement that the federal Defendants devise and implement "a concise and practical plan" to comply with NAGPRA, ARPA or NHPA, despite the desirability of such a plan. Thus, the Court does not find that the Tribe has satisfied its burden to show is has suffered an injury in fact that is not conjectural and hypothetical relating to the alleged failure to devise and implement a plan to comply with the cultural resource protection statutes at issue in Count Three. Count Three will be dismissed without prejudice.

### D.   Count Four

In Count Four, the Tribe alleges a violation of § 110 of NHPA for failure to locate, inventory and nominate for inclusion on the National Register, items and property within White Swan, North Point and other lands "that appear to qualify for inclusion in the National Register." (Second Amended Complaint, Doc. 165, ¶¶ 70-71.) Defendants move to dismiss this claim on two grounds: (1) the claim is moot because a Cultural Resources Management Plan ("the Plan") for Lake Francis Case, including the North Point and White Swan Recreation Areas, has been adopted, which satisfies the Corps' obligations under Section 110 of the NHPA; and (2) the Tribe has failed to exhaust its administrative remedies with regard to the nomination of sites to the National Register of Historic Places ("the National Register").

The Tribe's responses to Defendants' arguments regarding Count Four are: (1) the Plan does not meet the standards under the NHPA to ensure the protection of cultural resources; and (2) this Court has subject matter jurisdiction under 28 U.S.C. § 1361, providing for subject matter jurisdiction over causes of action in the nature of mandamus.

The Court need not consider the issue of whether the Plan satisfied the Corps' obligations under Section 110 of the NHPA. Rather, this claim will be dismissed for failure to exhaust administrative remedies. Although the Court has the authority to grant mandamus relief under 28 U.S.C. § 1361, the Tribe is not excused from exhausting its administrative remedies under that statute.

In a prior lawsuit, the Tribe attempted to pursue claims similar to those in Count Four. *See Yankton Sioux Tribe v. United States Army Corps of Engineers*, 194 F.Supp.2d 977, 990-94 (D.S.D. 2002). The claims were dismissed without prejudice because they were not ripe for review and the Yankton Sioux Tribe had not exhausted its administrative remedies. As the Court recognized in the prior case, "[t]he NHPA does not *require* the Tribe to exhaust its administrative remedies prior to seeking judicial review. *See* 16 U.S.C. § 470a(a)(5)." *Id.* at 992 (emphasis in original). Thus, the Court has the discretion to determine whether the action should be dismissed for failure to exhaust administrative remedies. *Id.* (citing *Missouri v. Bowen*, 813 F.2d 864, 871 (8th Cir. 1987); *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (superseded by statute on other grounds) (recognizing that where Congress has not mandated exhaustion of administrative remedies, "sound judicial discretion governs" the exhaustion inquiry)). The Eighth Circuit explained the exhaustion doctrine:

> The basic concept underlying the requirements of the exhaustion doctrine is that of judicial economy. Encouraging exhaustion serves to avoid premature interruption of the administrative process by allowing an agency to apply its special expertise, to discover and correct errors, and to develop a factual background on the issue in question. Moreover, requiring exhaustion discourages the "frequent and deliberate flounting of the administrative process."

*Bowen*, 813 F.2d at 871 (citations omitted).

The Tribe has not alleged that the Corps has taken final action regarding any particular cultural property. Moreover, the Tribe has not asserted that it has exercised its statutory right to appeal the Corps' failure to nominate any particular property for inclusion on the National Register. *See* 16 U.S.C. § 470a(a)(5) (providing that any person may appeal to the Secretary of the Interior a nominating authority's refusal to nominate a property for listing on the National Register). The

10

Secretary of the Interior makes the final administrative decision on the issues of whether a property is included on the National Register, and the Tribe has not established that it has given the Secretary, through a proper administrative appeal, the opportunity to decide whether any particular property is eligible for listing on the National Register. Based upon the Tribe's allegations in the Second Amended Complaint, the Court's intervention in the administrative process would be premature and Count Four will be dismissed without prejudice. Accordingly,

## CONCLUSION

Count One of the Second Amended Complaint will not be dismissed. The remaining counts, however, will be dismissed. Accordingly,

IT IS ORDERED that Defendants' Motion to Dismiss, Doc. 180, is denied as to Count One, is granted with prejudice as to Count Two, and is granted without prejudice as to Counts Three and Four.

Dated this 30th day of September, 2005.

BY THE COURT:

Lawrence L. Piersol
Chief Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: _____
    DEPUTY

11