
UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| YANKTON SIOUX TRIBE, and its individual members, | \* \* \* | CIV 02-4126 |
| Plaintiffs, | \* \* | |
| vs. | \* \* | MEMORANDUM OPINION |
| UNITED STATES ARMY CORPS OF ENGINEERS; PETE GEREN, Secretary of the Army; GEORGE S. DUNLOP, Principal Deputy Assistant Secretary of the Army for Civil Works; ROBERT L. ANTWERP, Chief of Engineers; DAVID C. PRESS, Omaha District Commander and District Engineer; THE UNITED STATES OF AMERICA; THE STATE OF SOUTH DAKOTA; JEFF VONK, Secretary of the Department of Game, Fish and Parks for the State of South Dakota; and JOHN DOES, Contractors, | \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* | AND ORDER DENYING PLAINTIFFS' MOTION TO ALTER JUDGMENT UNDER RULE 60(b)(1) |
| Defendants. | \* \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Title to the real property in question was granted to the United States through condemnation actions in this Court over 50 years ago. Plaintiffs presently challenge the proceedings and the title that is now vested in the United States by virtue of a Motion for Relief from Judgment under Rule 60(b)(1) of the Federal Rules of Civil Procedure. The challenge is to the substance of this Court's Memorandum Opinion and Order and Judgment of March 31, 2008.

Title to the real property in question was granted to the United States through sales and in other instances through condemnation actions in this Court over 50 years ago. It has not been shown that there were any challenges to the legality of the takings and there has been no showing of any appeals from the condemnation judgments of this Court.

Plaintiffs cannot challenge the proceedings and the resulting title that now is vested in the United States by virtue of a 60(b) Motion. Plaintiffs or their predecessors could have challenged the taking by objecting at trial and appealing from the condemnation proceedings. In *United States v. Herring*, 750 F.2d 669, 671 (8th Cir. 1984), the court stated that in cases where an issue concerning the statutory validity of the taking arises, the government is considered to have taken only a defeasible title and a party may challenge the validity of the taking on appeal. However, once the time for appeal has expired, title to the land becomes 'indefeasible' and is only subject to challenge pursuant to the Quiet Title Act of 1972, 28 U.S.C. § 2409a(a)[1]. *Id.* (stating that "title was 'defeasible' until final judgment only to the extent that it was subject to challenge by the then existing landowner as a wrongful taking."); *Block v. North Dakota*, 461 U.S. 273, 286, 103 S.Ct. 1811, 1819, 75 L.Ed.2d 840 (1983) ("Congress intended the [Quiet Title Act] to provide the exclusive means by which adverse claimants could challenge the United States' title to real property."). Because Plaintiffs or their predecessors failed to bring this action within the 12-year statute of limitations provision governing Quiet Title Act claims, 28 U.S.C. § 2409a(g), any action under that Act is now time barred.

Legal title was vested with the United States even though the Court concludes there was never condemnation authority provided to the Army Corps of Engineers by Congress for the

---

[1]The Court notes that while the language of the Quiet Title Act states that it "does not apply to trust or restricted Indian lands," the United States Supreme Court has stated that this exclusion "operates solely to retain the United States' immunity from suit by third parties challenging the United States' title to land held in trust for Indians....Thus, when the United States claims an interest in real property based on that property's status as trust or restricted Indian lands, the Quiet Title Act does not waive the Government's immunity." *United States v. Mottaz*, 476 U.S. 834, 842-43, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986). In *Mottaz*, the Court found that because the United States was claiming an interest in the disputed lands not on behalf of Indian beneficiaries of a trust, but rather on behalf of the United States Forest Service and the Chippewa National Forest, the Court held the Quiet Title Act was the exclusive vehicle by which the plaintiff could judicially challenge the title of the United States to the real property in question. *Id.* at 843.

In the present case, because the United States condemned the land in question not on behalf of Indian beneficiaries of a trust, but rather for its own purposes to build a dam, Plaintiffs' claims, like those of the plaintiff in *Mottaz*, are governed by the Quiet Title Act.

2

acquisition by condemnation of lands at issue in this case. As stated by the Eighth Circuit in *Lower Brule Sioux Tribe v. South Dakota*, 711 F.2d 809, 813 (8th Cir. 1983) and in *United States v. Winnebago Tribe of Nebraska*, 542 F.2d 1002, 1006 (8th Cir. 1976), the Flood Control Act of 1944, Pub.L. No. 78-534, 58 Stat. 887 (1944), did not authorize the acquisition of Indian property. However, Congress, as recognized by the court in *Lower Brule*, passed seven subsequent statutes which authorized limited takings of Indian lands for specific hydroelectric and flood control dams on the Missouri River in North and South Dakota.[2] The Court finds, however, in examining these seven statutes, that none regard the lands in question in the present case.

In addition, the Court found no other statutes authorizing the takings by condemnation of the lands in this case. The other authorities listed in Table 4[3] of the report by Army Corps of Engineers' expert, James Muhn, which were cited in the condemnation filings and district court judgments for the condemned lands, do not show, as required in *Winnebago*, 542 F.2d at 1006, the clear intent of Congress to take the tribal lands at issue by eminent domain. Additionally, the Court examined the language of the Act of July 6, 1954, Pub.L. No. 83-478, 68 Stat. 452, and found that it also did not authorize the takings of the Indian lands in question, but rather served to assist the families that had already been displaced as a result of the condemnation proceedings.

Accordingly, despite the fact that neither the Army Corps of Engineers nor any other part

---

[2] The seven taking statutes passed by Congress in order to construct the dams within the Missouri River Basin Project were the Fort Berthold Garrison Act, Pub.L. No. 81-437, 63 Stat. 1026 (1949); Cheyenne River Oahe Act, Pub.L. No. 83-776, 68 Stat. 1191 (1954); Standing Rock Oahe Act, Pub.L. No. 85-915, 72 Stat. 1762 (1958); Fort Randall (Crow Creek) Act, Pub.L. No. 85-916, 72 Stat. 1766 (1958); Fort Randall (Lower Brule) Act, Pub.L. No. 85-923, 72 Stat. 1773 (1958); Big Bend (Lower Brule) Act, Pub.L. No. 87-734, 76 Stat. 698 (1962); and Big Bend (Crow Creek) Act, Pub.L. No. 87-735, 76 Stat. 704 (1962). *Lower Brule Sioux Tribe v. South Dakota*, 711 F.2d 809, 813 n.1 (8th Cir. 1983).

[3] Act of April 24, 1888, 25 Stat. 94; Act of March 1, 1917, 39 Stat. 948; Act of July 16, 1918, 40 Stat. 904; Act of February 26, 1931, 46 Stat. 1421; Act of August 18, 1941, 55 Stat. 638; Act of December 22, 1944, Pub.L. 78-534, 58 Stat. 887; Act of May 2, 1946, Pub.L. 79-274, 60 Stat. 160; Act of July 31, 1947, Pub.L. 80-296, 61 Stat. 686; Act of June 25, 1948, Pub.L. 80-782, 62 Stat. 1019.

of the United States government ever received authorization from Congress to condemn the lands in question, the Court finds that the time for which the Tribe or any of its members or their predecessors may challenge the legality of these takings has expired. As explained above, aside from the question of the validity of the 60(b) motion, in *United States v. Herring*, 750 F.2d 669, 671 (8th Cir. 1984), the court stated that in cases where an issue concerning the statutory validity of the taking arises, the government is considered to have taken only a defeasible title and a party may challenge the validity of the taking on appeal. However, once the time for appeal has expired, title to the land becomes 'indefeasible' and is only subject to challenge pursuant to the Quiet Title Act of 1972, 28 U.S.C. § 2409a(a). There is no evidence in the record that Plaintiffs or their predecessors challenged or appealed the legality of the condemnation proceedings which vested, over 50 years ago, title to the real property in question in the United States. Accordingly, under *United States v. Herring*, 750 F.2d 669 (8th Cir. 1984) and *Block v. North Dakota*, 461 U.S. 273, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983), title to the land is only subject to challenge pursuant to the Quiet Title Act. Because Plaintiffs or their predecessors failed to bring a challenge within the 12-year statute of limitations provision governing Quiet Title Act claims, 28 U.S.C. § 2409a(g), any challenge to legal title having vested in the United States is time barred.

The conclusiveness of the condemnation proceedings only applies to title to real property. Under the teachings of *Lower Brule Sioux Tribe v. South Dakota*, 711 F.2d 809 (8th Cir. 1983) and *South Dakota v. Bourland*, 949 F.2d 984 (8th Cir. 1991), *rev'd on other grounds, South Dakota v. Bourland*, 508 U.S. 679, 113 S.Ct. 2309, 124 L.Ed.2d 606 (1993) (citing *Lower Brule*), the condemnation proceedings did not and could not affect reservation boundaries. Any indication to the contrary in the Memorandum Opinion and Order of March 31, 2008, is corrected by this acknowledgment. The result after that acknowledgment is, however, the same. The decision in the companion case, *Yankton Sioux Tribe v. Gaffey*, No. 98-4042 (D.S.D. filed Dec. 19, 2007), finally and fully determined the boundaries of the Yankton Sioux Reservation. (*See also* Ex. 12, the map which designates the reservation areas.)[4] The real property in question here was not a part of the

---

[4]The map is approximately 38 inches by 48.5 inches and because of its size and composition, smaller copies were sent as a part of the appeal record.

checkerboard boundaries of the Yankton Sioux Reservation. That case, which is now on appeal, was fully litigated with all parties being represented by counsel. The Plaintiff Yankton Sioux Tribe urged a far larger reservation than was the result. That result cannot be re-litigated here by a 60(b) motion. Before the decision in the present case, the parties in the present case were asked to comment to the Court on the impact of the Gaffey decision upon the present case.

The real estate at issue in the present case was also under consideration for purposes of Yankton Sioux reservation exterior boundary determinations in *Yankton Sioux Tribe v. Gaffey*, 14 F.Supp.2d 1135, 1159 (D.S.D. 1998), *rev'd on other grounds, Yankton Sioux Tribe v. Gaffey*, 188 F.3d 1010 (8th Cir. 1999). The result in the present case is the same as previously ruled on in *Yankton Sioux Tribe v. Gaffey*, No. 98-4042 (D.S.D. filed Dec. 19, 2007) and Doc. 427 in that real estate which is at issue in the present lawsuit is not within the checkerboard reservation which is what remains of the Yankton Sioux Reservation. All parties were represented in that litigation which determined reservation boundaries, and not legal title.

There were other claims raised in the 60(b) motion which are simply not part of the remaining claims in the Third Amended Complaint and are not properly the subject of a 60(b) motion.

For the foregoing reasons, it is hereby ORDERED that Plaintiffs' Motion to Alter Judgment, Doc. 356, be DENIED.

Dated this 21st day of April, 2009.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: *Shelly Marquies*
Deputy